James E. Mercante
Joseph R. Federici
**RUBIN, FIORELLA, FRIEDMAN & MERCANTE LLP**
630 Third Avenue
New York, NY 10017
Phone: 212-953-2381
Fax:    212-953-2462
*Attorneys for Plaintiff*
*THE STANDARD FIRE INSURANCE COMPANY*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------X

| | | |
|---|---|---|
| THE STANDARD FIRE INSURANCE , COMPANY, | : : : | Docket No. |
| Plaintiff, | : : | |
| vs. | : : | **COMPLAINT FOR** <br> **DECLARATORY JUDGMENT** |
| MATTHEW PROMAN, | : : | |
| Defendant. | : | |

---------------------------------------------------------X

     **COMES NOW** plaintiff, THE STANDARD FIRE INSURANCE COMPANY, by and through its attorneys, RUBIN, FIORELLA, FRIEDMAN & MERCANTE LLP, as and for its complaint against defendant MATTHEW PROMAN, alleges upon information and belief, as follows:

### THE PARTIES

1. Plaintiff, THE STANDARD FIRE INSURANCE COMPANY ("TRAVELERS") is a foreign corporation existing under the laws of the State of Connecticut, with its office and principal place of business located at One Tower Square, Hartford, Connecticut.

2. Defendant, MATTHEW PROMAN ("PROMAN"), is a natural person owning a home at 966 Wateredge Pl., Hewlett, NY 11557, with a secondary residence at 9265 Burton Way, Apt 401, Beverly Hills, CA 90210.

4843-4152-4643, v. 5

## JURISDICTION AND VENUE

3. This is an action for declaratory relief pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 and 28 U.S.C. § 2202, for the purposes of determining a question of actual controversy between the parties under a marine insurance policy, with respect to, *inter alia*, first party coverage for a sinking of PROMAN's vessel.  The marine insurance policy was issued in the State of New York by TRAVELERS to PROMAN to insure the vessel that was regularly kept in the State of New York.

4. This is an admiralty and maritime dispute within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure and within the Court's admiralty jurisdiction pursuant to Article III, Section 2 of the Constitution of the United States and 28 U.S.C. § 1333, and jurisdiction exists also on the basis of Diversity.

5. Venue is proper in this district in accordance with 28 U.S.C. § 1391.

## NATURE OF THE ACTION

6. This action concerns an claim for hull insurance proceeds involving the sinking of PROMAN's 2007 68' Azimut named "EASTBOUND AND DOWN" (the "vessel") on March 8, 2019.

7. On May 21, 2018, Proman's insurance broker requested a quote from Travelers for a policy insuring the vessel for $1 million.

8. In or about the time PROMAN was seeking to insure the vessel with TRAVELERS for $1.0 million, marine surveyor Chris Nebel of Advanced Marine Surveyors conducted a condition and valuation survey.  Nebel issued a report dated May 2, 2018 finding that the vessel was in "fair condition" but that "*[t]he vessel appears neglected and is lacking in basic maintenance and repairs*."

2

4843-4152-4643, v. 5

9.  Nebel's May 2, 2018 report estimated the vessel's market value at $575,000.

10. In 2018, in or about the time PROMAN was seeking to insure the vessel with TRAVELERS for $1.0 million,  Proman listed the vessel for sale for $699,000.

11. In 2018, in or about the time PROMAN was seeking to insure the vessel with TRAVELERS for $1.0 million, a potential buyer offered $590,000 for the vessel.

12. Proman accepted the offer for $590,000, but the sale did not go through.

13. In 2018, in or about the time PROMAN was seeking to insure the vessel with TRAVELERS for $1.0 million, a potential buyer offered $615,000 for the vessel.

14. Proman accepted the offer for $615,000, but the sale did not go through.

15. In early September, 2018, PROMAN inquired with his broker into increasing the vessel's hull insurance with TRAVELERS from $1 million to $1.35 million.

16. PROMAN did not follow through with seeking the increase in the vessel's hull insurance upon learning that TRAVELERS would require a full survey of the vessel.

17. PROMAN's two applications for insurance to TRAVELERS list the purchase price of the vessel as $1.35 million.

18. Upon purchase of the vessel in or about 2011 or 2012, PROMAN's vessel was first insured with AIG through December, 2015 and then by GEICO Marine effective December 2015.

19. The vessel's purchase price disclosed to AIG in or about 2011-2012 was $1.1 million.

20. The vessel's purchase price disclosed to GEICO Marine in or about 2015 was $1.1 million.

21. The insurance applications submitted to TRAVELERS for coverage state: "*Paid Captain: No*" and "*Total paid Crew Including Captain: 0*".

4843-4152-4643, v. 5

22. The insurance applications contain a section to list "Prior Boating Losses."  The only loss listed is "*storm damage total damage amount TBD*".  *See* Applications for Insurance dated July 20, 2018 and August 1, 2018 attached and incorporated herein as **EXHIBIT "A"**.

23. Based on the representations contained in PROMAN's application, TRAVELERS issued a marine insurance policy to PROMAN for the vessel effective July 13, 2018, bearing policy number 603064741 840 1 (hereinafter the "Policy").  *See* Policy attached and incorporated herein as **EXHIBIT "B"**.

24. The vessel was arrested *in rem* on July 26, 2018 in connection with a lawsuit filed against the vessel and PROMAN in this court by a third-party:  *Gatsby Yacht Group, LLC, et. al. v. M/Y "EAST BOUND & DOWN" and Matthew Proman*, 2:18-CV-04242-JMA-GRB.

25. While under arrest, the vessel was hauled ashore by Brewer Yacht Yard in Greenport, N.Y. and winterized by Brewer.

26. In January of 2019 (after security was posted), the vessel arrest was lifted, and PROMAN authorized workers at Brewer Yacht Yard in Greenport, N.Y. to commission the vessel's two main engines and generator.

27. In or about the end of January 2019, PROMAN's captain (Jason Milius) navigated the boat from Greenport, N.Y. (where it had been hauled during the arrest) to PROMAN's residence in Hewlett, N.Y.

28. On March 8, 2019, the vessel sank at the dock at PROMAN's residence in Hewlett, N.Y.

29. The cause of the March 8, 2019 sinking was an intentional opening of the vessel's sea water inlet valve (seacock) and a disconnected seawater inlet hose to the vessel's generator, allowing the vessel to take on water and sink.

30. PROMAN submitted a claim to recover the Policy's $1 million hull policy limit.

4843-4152-4643, v. 5

31. A coverage investigation was initiated due to the apparent scuttling of the vessel.

32. As part of the investigation, TRAVELERS obtained records reflecting PROMAN's financial condition at the time of the sinking, comprehensive vessel records including the vessel's loss history, and conducted an Examination Under Oath ("EUO") of PROMAN on June 12, 2019 pursuant to the Policy provisions.

33. PROMAN's application for insurance to TRAVELERS misrepresented the vessel's purchase price.

34. PROMAN's application for insurance to TRAVELERS did not disclose five prior losses involving the vessel and its tender boat.

35. PROMAN's application for insurance to TRAVELERS misrepresented that the vessel did not have a paid captain.

36. At the time of the sinking, PROMAN was in violation of the Policy's lay-up period.

37. PROMAN failed to fully cooperate with the insurer's investigation.

38. The sinking of the vessel was not accidental and/or fortuitous event.

39. The cause of the vessel submerging at the dock was a 'disconnected' seawater inlet hose to the generator with two hose clamps having been removed, and an open sea water inlet valve.

40. The cause of the vessel submerging at the dock was intentional, not accidental.

41. On September 4, 2019, TRAVELERS issued a letter voiding the Policy and denying coverage to PROMAN.  The September 4, 2019 letter advised that coverage was denied based on breach of the Policy's layup warranty, that the sinking was not the result of an unforeseen and/or fortuitous event, that the insured failed to fully cooperate with the investigation of the claim, and because the insured failed to properly winterize the vessel.

In the letter, TRAVELERS reserved its rights to deny coverage with respect to whether PROMAN was involved with the intentional sinking of the vessel. *See* TRAVELERS September 4, 2019 letter attached and incorporated herein as **Exhibit "C"**.

42. The Policy's insurance premium has or will be returned to PROMAN.

## FIRST CLAIM FOR RELIEF

## Concealment, Misrepresentation, or Fraud

43. TRAVELERS repeats and realleges the allegations set forth in paragraphs 1 through 42 as if fully set forth herein.

44. PROMAN's applications for insurance to TRAVELERS list the purchase price of the vessel as $1.35 million. The application also states: "*Paid Captain: No*" and "*Total paid Crew Including Captain: 0*". The applications contain a section to list "Prior Boating Losses." The only loss listed is "*storm damage total damage amount TBD*". *See* Applications for Insurance attached and incorporated herein as **EXHIBIT "A"**.

45. Based on the representations contained in PROMAN's application, TRAVELERS issued the Policy effective July 13, 2018.

46. PROMAN purchased the vessel for less than the $1.35 million amount in his applications for insurance.

47. PROMAN used a paid captain on the vessel both before and after PROMAN's applications for insurance to TRAVELERS.

48. The only boating loss referenced on PROMAN's applications for insurance to TRAVELERS is damage from Superstorm Sandy in 2012.

49. TRAVELERS investigation determined that the following five (5) losses were not disclosed on PROMAN's applications for insurance to TRAVELERS.

1. In 2015, the vessel's tender was damaged by capsizing. PROMAN filed and insurance claim and recovered $18,000 from insurer AIG.

2. In 2016, the vessel was being operated in the Reynolds Channel in the South Shore of Long Island when it collided with a bridge resulting in $37,483.23 in damage.  PROMAN sued the hired captain in the New York State Court (*Proman v. Milius*, Supreme Court of the State of New York, County of Nassau, Index No. 600537/2017).

3. In 2017 or 2018, the vessel was damaged in a grounding incident.  Proman filed an insurance claim and recovered $60,000 from GEICO Marine.

4. In May, 2018, Proman filed a claim with GEICO Marine for electrolysis damage to one of the vessel's propeller shafts.  The claim was denied.

5. In March, 2018 the vessel was damaged from repeatedly striking a dock.  Proman filed an insurance claim and recovered $70,476 from GEICO Marine.

50. PROMAN'S applications to TRAVELERS did not disclose the 2015 loss involving the vessel's tender.

51. PROMAN'S applications to TRAVELERS did not disclose the 2016 loss involving the bridge collision.

52. PROMAN'S applications to TRAVELERS did not disclose the 2017 or 2018 grounding incident.

53. PROMAN'S applications to TRAVELERS did not disclose the 2018 claim involving the propeller shaft.

54. PROMAN'S applications to TRAVELERS did not disclose the 2018 claim involving the vessel striking the dock.

4843-4152-4643, v. 5

55. The Policy terms include the following wording:

**THE POLICY**

The Travelers Yacht Policy issued by the Company effective from *July 13, 2018* includes the following relevant provisions:

\*       \*       \*

**TRAVELERS YACHT POLICY**

**SECTION ONE: GENERAL POLICY TERMS, CONDITIONS, LIMITATIONS AND WARRANTIES**

The following terms, conditions, limitations and warranties apply to all **SECTIONS** and coverages provided by this policy

\*       \*       \*

**B. CONCEALMENT, MISREPRESENTATION OR FRAUD**

The entire **policy** will be void if, in connection with your insurance application, whether before or after a loss or **occurrence**, any **insured** has:

1. Misrepresented or failed to disclose any material fact or circumstance or made any false statement related to this insurance; or

2. Engaged in fraudulent conduct.

\*       \*       \*

**SECTION TWO: GENERAL POLICY EXCLUSIONS**

The following exclusions apply to all SECTIONS and coverages provided by this **policy**:

**WE DO NOT COVER ANY LOSS OR DAMAGE CAUSED BY:**

**A. CONCEALMENT, MISREPRESENTATION OR FRAUD**

The coverage provided by this **policy** depends on the statements you made in your application. If you or any insured conceals or misrepresents any material fact or circumstance, whether before or after a loss, this **policy** is **VOID** and you will no longer be protected by it.

8

\*       \*       \*

56. PROMAN breached the Policy's General Terms, Conditions, Limitations and Warranties for Concealment, Misrepresentation, or Fraud.

57. Applicants for marine insurance owe a General Maritime Law duty of "*Uberrimae Fidei*" ("utmost good faith"). This doctrine requires an insured to "disclose to the insurer all known circumstances that materially affect the risk being insured". *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9 (2d Cir. 1986). A breach of the duty of *Uberrimae Fidei* is grounds for the insurer to void the policy regardless of "whether such omission is intentional or results from mistake, accident, forgetfulness, or inadvertence." *Fireman's Fund Ins. Co. v. Great Am. Ins. Co.*, 822 F.3d 620 (2d Cir. 2016).

58. PROMAN breached the General Maritime Law duty of *Umberrimae Fidei*.

59. By reason of the premises, TRAVELERS is entitled to a judgment declaring that TRAVELERS Policy of insurance to PROMAN is void from inception.

## SECOND CLAIM FOR RELIEF

### Breach of Layup Warranty

60. TRAVELERS repeats and realleges the allegations set forth in paragraphs 1 through 59 as if fully set forth herein.

61. In October, 2018 the vessel was professionally winterized and laid up ashore at Brewer Yacht Yard in Greenport, N.Y. while the vessel was under arrest by a warrant of arrest issued by the Eastern District of New York.

62. In January, 2019, PROMAN directed Brewer's to commission the vessel's engines and generator so that PROMAN could operate the boat to PROMAN's residence in Hewlett, N.Y.

63. In his Examination Under Oath, PROMAN testified he was "*100 percent*" aware that his commissioning and operation of the vessel to Hewlett, N.Y. in January, 2019 was a breach of the Policy's layup warranty.

64. The vessel's engines and generator were not winterized with winterizing fluid when the vessel sank at PROMAN's dock on March 8, 2019.

65. A 'bubbler' system around the vessel was not utilized when the vessel sank at PROMAN's dock on March 8, 2019.

66. The vessel was uncovered when the vessel sank at PROMAN's dock on March 8, 2019.

67. The vessel was unlocked when the vessel sank at PROMAN's dock on March 8, 2019.

68. The vessel's keys were located in the ignition when the vessel sank at PROMAN's dock on March 8, 2019.

69. The vessel was not decommissioned and taken out of active service when the vessel sank at PROMAN's dock on March 8, 2019.

70. The Policy includes a warranty that the vessel be laid up between *November 1, 2018* and *April 1, 2019*. The Policy provides:

\*     \*     \*

**L. LAY-UP WARRANTY**

You expressly warrant that you will **lay-up** your **yacht** for the period of time as shown in the **declarations**. This warranty applies to all **insureds**.

During the **lay-up** period, your **yacht** must be maintained for the conditions reasonably expected during the **lay-up**. In addition, your **yacht** cannot be used for any boating activities or as living quarters during the **lay-up** period.

\*     \*     \*

71. The Policy defines "lay-up" as follows:

\*     \*     \*

**DEFINITIONS**

**"lay-up"** means taking your **yacht** out of active service and decommissioning it for the period of time as shown in the **declarations**. **Lay-up** can include either storage on land or afloat.

\*          \*          \*

72. The Policy's Declarations indicate the layup period is between *November 1, 2018* and *April 1, 2019*.

73. PROMAN was in breach of the layup warranty when the vessel sank at PROMAN's dock on March 8, 2019.

74. By reason of the premises, TRAVELERS is entitled to a judgment declaring that PROMAN was in breach of the Policy's Lay-Up warranty and TRAVELERS owes no duty to provide insurance coverage to PROMAN for the sinking of his vessel.

## THIRD CLAIM FOR RELIEF

### Failure to Winterize

75. TRAVELERS repeats and realleges the allegations set forth in paragraphs 1 through 74 as if fully set forth herein.

76.  The Policy excludes coverage for loss or damage caused or resulting from the insured's failure to properly winterize the vessel:

\*          \*          \*

**SECTION THREE: YACHT, AUXILIARY EQUIPMENT AND DINGHY COVERAGE**

**D. EXCLUSIONS**

In addition to the **SECTION TWO: GENERAL POLICY EXCLUSIONS**, we do not cover loss or damage caused by or resulting from:

\*          \*          \*

9. The **insured's** failure to properly winterize the **yacht** or **dinghy** in accordance with the manufacturer's specifications or customs of the area.

\*          \*          \*

77. The vessel was not properly winterized when it sank at PROMAN's dock on March 8, 2019.

78. By reason of the premises, TRAVELERS is entitled to a judgment declaring that TRAVELERS owes no duty to provide insurance coverage to PROMAN for the sinking of his vessel.

## FOURTH CLAIM FOR RELIEF

### Failure to Cooperate

79. TRAVELERS repeats and realleges the allegations set forth in paragraphs 1 through 78 as if fully set forth herein.

80. The Policy terms include the following:

*         *         *

### SECTION TWELVE: DUTIES AFTER A LOSS OR OCCURRENCE

This SECTION applies to all coverages provided under this **policy**.  Failure to comply with any of these duties may result in no coverage under this **policy**.

**A.      GENERAL DUTY**

In the event of any loss, every **insured** must assist and cooperate with us in the investigation, settlement or defense of any claim or suit.

*         *         *

**F.      EXAMINATION UNDER OATH**

1.      Every **insured** must:

(a)      Submit to questioning under oath while not in the presence of any other insured as often as we may reasonably require…

*         *         *

**H.      SUPPORT OF CLAIM**

You must support any claim by:

4843-4152-4643, v. 5

(2)     Producing records to verify the claim and its amount.

(3)     Permitting copies of records to be made.

*          *          *

81. PROMAN failed to cooperate with the investigation for reasons including but not limited to the following.

82. PROMAN failed to provide records related to the purchase of the vessel.

83. PROMAN claims all records relating to the purchase of the vessel were destroyed as a result of Superstorm Sandy (2012).

84. PROMAN failed to provide documents referred to or created by his surveyor, Robert Scanlon.

85. PROMAN provided incomplete and records of his text messages with Captain Milius.

86. PROMAN provided redacted telephone records.

87. By reason of the premises, TRAVELERS is entitled to a judgment declaring that TRAVELERS owes no duty to provide insurance coverage to PROMAN for the sinking of his vessel.

## FIFTH CLAIM FOR RELIEF

### Sinking Not Unforseen and/or Fortuitous Event

88. TRAVELERS repeats and realleges the allegations set forth in paragraphs 1 through 87 as if fully set forth herein.

89. The Policy covers consequential damage resulting from sinking provided that the sinking was caused by an unforeseen and/or fortuitous event:

*          *          *

4843-4152-4643, v. 5

**NAVIGATIONAL WARRANTY ENDORSEMENT**

CONSEQUENTIAL DAMAGE ENDORSEMENT

We cover immediate consequential damage to your yacht insured hereunder resulting from any fire, sinking, submersion, collision or grounding provided such was caused by an unforeseen and/or fortuitous event and did not result from the neglect of your yacht.

\*        \*        \*

90. The scuttling of the vessel at PROMAN's dock by virtue of a disconnected seawater inlet hose to the generator with two removed hose clamps and an open seawater inlet valve was not an unforeseen and/or fortuitous event.

91. By reason of the premises, TRAVELERS is entitled to a judgment declaring that TRAVELERS owes no duty to provide insurance coverage to PROMAN for the sinking of his vessel.

## SIXTH CLAIM FOR RELIEF

### Intentional Act Exclusion

92. TRAVELERS repeats and realleges the allegations set forth in paragraphs 1 through 91 as if fully set forth herein.

93. The Policy excludes coverage for damage intentionally caused by any covered person:

\*        \*        \*

**SECTION TWO: GENERAL POLICY EXCLUSIONS**

The following exclusions apply to all SECTIONS and coverages provided by this **policy**:

**WE DO NOT COVER ANY LOSS OR DAMAGE CAUSED BY:**

**C. INTENTIONAL INJURY OR DAMAGE**

We do not cover any loss, damage, injury, or loss of life which is intentionally caused by any covered person, regardless of whether or not such person is convicted of such act by a criminal court.

\*        \*        \*

14

94. The sinking of the vessel by virtue of a disconnected seawater inlet hose to the generator with two removed hose clamps and an open sea water inlet valve was intentionally caused.

95. TRAVELERS' investigation into who may have scuttled the vessel continues.

96. TRAVELERS reserves its right to deny coverage if TRAVELERS' investigation reveals that PROMAN was involved in the scuttling of the vessel.

97. By reason of the premises, TRAVELERS is reserving its rights to seek a judgment declaring that TRAVELERS owes no duty to provide insurance coverage to PROMAN for the sinking of his vessel.

**WHEREFORE**, plaintiff THE STANDARD FIRE INSURANCE COMPANY, respectfully requests the following:

a.  On the FIRST CLAIM FOR RELIEF, judgment declaring that THE STANDARD FIRE INSURANCE COMPANY'S Policy of insurance to MATTHEW PROMAN is void from inception;

b.  On the SECOND CLAIM FOR RELIEF, judgment declaring that THE STANDARD FIRE INSURANCE COMPANY owes no duty to provide insurance coverage to MATTHEW PROMAN for the sinking of his vessel;

c.  On the THIRD CLAIM FOR RELIEF, judgment declaring that THE STANDARD FIRE INSURANCE COMPANY owes no duty to provide insurance coverage to MATTHEW PROMAN for the sinking of his vessel;

d.  On the FOURTH CLAIM FOR RELIEF, judgment declaring that THE STANDARD FIRE INSURANCE COMPANY owes no duty to provide insurance coverage to MATTHEW PROMAN for the sinking of his vessel;

e.  On the FIFTH CLAIM FOR RELIEF, judgment declaring that THE STANDARD FIRE INSURANCE COMPANY owes no duty to provide insurance coverage to MATTHEW PROMAN for the sinking of his vessel;

f.  On the SIXTH CLAIM FOR RELIEF, THE STANDARD FIRE INSURANCE COMPANY is reserving its rights to seek judgment declaring that it owes no duty to provide insurance coverage to MATTHEW PROMAN for the sinking of his vessel; and

g.  For such other, additional, and further relief the Court deems just and equitable.

Dated: September 4, 2019
New York, New York

Respectfully submitted,

By:     *James E. Mercante*
        James E. Mercante, Esq.
        Joseph R. Federici, Esq.
        **RUBIN, FIORELLA FRIEDMAN, &**
        **MERCANTE LLP**
        630 Third Avenue
        New York, NY 10017
        Phone:     212-953-2381
        Fax:       212-953-2462